IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LESLIE A. GLEAVES, | |
| Plaintiff, | 8:17-CV-308 |
| vs. | |
| CREIGHTON UNIVERSITY, a Nebraska Non Profit Corporation, | MEMORANDUM AND ORDER |
| Defendant. | |

The plaintiff, Leslie Gleaves, is suing the defendant, Creighton University, for allegedly violating the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq*. Creighton has moved for summary judgment (filing 22) and for the reasons set forth below, that motion will be granted.

BACKGROUND

The following facts are not meaningfully disputed. From 2010 until she was terminated in 2015, Gleaves—a sixty-two-year-old nursing instructor—was employed in Creighton's Pediatric Infectious Disease Department. Filing 23 at 2-3. The Pediatric Infectious Disease Department conducts clinical research and performs medical studies on various pediatric patients. Filing 25 at 1. In that department, Gleaves worked as a Research Nurse Coordinator. That position required Gleaves to generally explain the research study to the patient participants, ensure that study protocols were being followed, and obtain informed consent and proper Health Insurance Portability and Accountability Act ("HIPAA") authorizations. Filing 25 at 3-5.

Like all studies performed at Creighton, those conducted in the Pediatric Infectious Disease Department are overseen by Creighton's Institutional Review Board. Filing 25 at 3. The Review Board is an independent, federally mandated committee comprising University faculty and community members. *See* filing 24-12 at 3. The purpose of the Board is to ensure that the each study complies with federal law and adequately adheres to study protocol. *See* filing 24-12 at 3-4. To effectuate that purpose, the Board receives monitoring reports prepared by an individual performing periodic on-site visits. *See* filing 23 at 7; *see also* filing 24-12 at 3. The Board also conducts for-cause audits—generally undertaken when a pattern of protocol violations are suspected by the Board. *See* filing 24-12 at 4-5.

In the fall of 2015, the Board conducted a for-cause audit on the clinical trial of a human papillomavirus (HPV) vaccine. Filing 24-18 at 2. Gleaves was the lead coordinator for that study. Filing 23 at 9. During the audit, the Board found several instances of protocol violations including, among other things, improper consents, data entry, and HIPPA authorizations. Filing 24-18 at 2. Based on these violations, the Board determined that Gleaves, "who is responsible for the numerous errors reported[,] is no longer allowed to conduct any human research activity at Creighton University." Filing 24-18 at 2. A few days later, Gleaves was terminated. Filing 24-11.

But, according to Gleaves, she was not terminated because of her failure to comply with the study protocols. Filing 25 at 1. Instead, Gleaves claims that Creighton discriminated against her by treating her "more harshly than its younger employees." *See* filing 1 at 7. More specifically, Gleaves contends that when younger employees failed to follow study protocol, they were not punished, but when Gleaves violated study protocol, she was terminated. Filing 1 at 7.

Following her termination, Gleaves filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"), and then this complaint.[1] Filing 1 at 2. Creighton now moves for summary judgment. *See* filing 22 at 1-2.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the

---

[1] Gleaves also filed a charge of age discrimination with the Nebraska Equal Opportunity Commission, but did not pursue her state law claims in this litigation. Filing 1 at 2.

nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

The ADEA prohibits discrimination against employees, age 40 and over, because of their age. *See*, 29 U.S.C. §§ 623(a), 631(a); *Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 800 (8th Cir. 2014). A plaintiff may establish a claim of intentional age discrimination either by offering direct evidence of discrimination or by satisfying the *McDonnell Douglas* burden-shifting framework. *Holmes v. Trinity Health*, 729 F.3d 817, 821 (8th Cir. 2013); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–803 (1973).

Creighton makes two arguments as to why, in its view, Gleaves' complaint must be dismissed. First, Creighton contends that Gleaves has not established a prima facie claim of age discrimination. Filing 23 at 17. Alternatively, Creighton claims under the *McDonnell Douglas* framework that Gleaves was terminated for a legitimate, non-discriminatory reason. Filing 23 at 19. The Court will begin its discussion with Creighton's former contention: that Gleaves has not established a prima facie claim under the ADEA before, if at all, considering Creighton's alternative argument.

### (i) Prima Facie Case

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802; *Tramp*, 768 F.3d at 800. Once the plaintiff establishes a prima facie case, the burden of

production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Tramp*, 768 F.3d at 800. A prima facie age-discrimination claim under the ADEA requires that the plaintiff show (1) she was at least 40 years old; (2) was qualified to perform her job; (3) was terminated; and (4) was replaced by another person sufficiently younger to permit the inference of age discrimination. *Olsen v. Capital Region Med. Ctr.*, 713 F.3d 1149, 1155 (8th Cir. 2013); *see also Hilde v. City of Eveleth*, 777 F.3d 998, 1004 (8th Cir. 2015). If the employer does so, then the plaintiff must present evidence that considered in its entirety (1) creates a fact issue as to whether the defendant's proffered reasons are pretextual, and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision. *Id.*; *Tusing v. Des Moines Independent Community School Dist.*, 639 F.3d 507, 516 (8th Cir. 2011).

Creighton does not dispute that Gleaves was over the age of 40 at the time of the challenged decision or that she suffered an adverse employment action when she was terminated. *See Hilde v. City of Eveleth*, 777 F.3d 998, 1004 (8th Cir. 2015). But Creighton does claim that following the Board's decision, Gleaves was no longer qualified to perform her job. *See filing 23 at 16-17*. Creighton also disputes whether Gleaves has provided the Court with any, much less sufficient evidence, demonstrating that she was replaced by an employee significantly younger than herself. *See filing 23 at 16-17*.

With respect to its former contention, Creighton claims that following the December 2, 2015 for-cause audit, Gleaves was no longer capable of performing her job as Research Nurse Coordinator. Filing 24-18 at 2. This is true, Creighton claims, because the Board made it clear that Gleaves was "no longer allowed to conduct any human subject research activity at Creighton University." Filing 24-18 at 2. And because Gleaves' position necessarily

required her to work with human research subjects and organize various studies, Creighton determined that Gleaves no longer qualified for the position—warranting her termination. *See* filing 24-18 at 2.

But Gleaves argues that when she was evaluated by her supervisor in July of 2014 and 2015, her supervisor found that she either "Meets Objectives" or "Exceeds Objectives." Filing 25-4 at 1; Filing 25-5 at 1. And because she had previously received favorable reviews, Gleaves contends that not only was she qualified to perform her job—but she did so in an "exemplary" fashion. Filing 25 at 19. The Court is not persuaded. Even assuming Gleaves was previously meeting the expectations of her supervisor, as of December 2, 2015, that was no longer true. *See* filing 24-4. By then, the Board had determined that Gleaves had engaged in serious non-compliance and could no longer conduct any human research activity at Creighton. *See* filing 24-4 at 2. And without the ability to be involved in human research activity, Gleaves was no longer qualified for her position as Research Nurse Coordinator—which included duties to recruit, interview, and screen study participants, maintain communication with participants, explain studies to participants mad obtain informed consents obtain appropriate history and physical data on study participants.[2] *See* filing 24-3 at 1-2.

Gleaves has also failed to provide the Court with sufficient evidence suggesting that she was replaced by substantially younger employee. To the contrary, the evidence actually in the record suggests that Sandy Strizek, a fifty-four-year-old nurse, was hired to fill Gleaves' position.[3] Filing 24-2 at 8.

---

[2] At no point does Gleaves contend that she did not make mistakes or that the Board's determination was incorrect. Filing 25 at 9-12.

[3] The Court notes Gleaves' contention that Amanda Zamora, not Strizek, replaced her as Research Nurse Coordinator. *See* filing 25 at 3. But there is no evidence in the record of

The Court is not, however, convinced that an eight-year age disparity is sufficient to infer discrimination. *See Girten v. McRentals, Inc.*, 337 F.3d 979, 982 (8th Cir. 2003) (finding that a nine-year age difference between the plaintiff and his replacement may not be sufficient to infer age discrimination); *compare Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1412-13 (8th Cir. 1997) (holding that a five-year age disparity is insufficient to infer discrimination), *with Keathley v. Ameritech Corp.*, 187 F.3d 915 (8th Cir. 1999) (holding that a fourteen-year age difference is sufficient to infer age discrimination). And so, the Court finds that Gleaves has failed to establish that an adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Tramp*, 768 F.3d at 800; *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 240-41 (8th Cir. 1995).

In sum, Gleaves has failed to demonstrate that she was qualified to perform her job and that she was replaced by a significantly younger employee. Accordingly, Creighton's motion for summary judgment will be granted on those grounds.

---

Zamora's age, other than Gleaves' broad assertion that Zamora was "significantly younger" and an unverified inference from Zamora's purported high school graduation date based on a LinkedIn profile hyperlinked in the plaintiff's brief. *See* filing 25 at 15. *See* filing 25-11 at 1. A LinkedIn profile hyperlinked from a brief is not "evidence" for purposes of summary judgment. *See Banks v. Deere*, 829 F.3d 661, 667-68 (8th Cir. 2016). So the Court cannot say that Gleaves was, in fact, replaced by a significantly younger employee. *See McDonnell Douglas*, 411 U.S. at 802; *Tramp*, 768 F.3d at 800. And even if there was evidence of Zamora's age, for the other reasons articulated in this Memorandum and Order, Gleaves' claim still fails.

*(ii) Pretext Stage*

Even if the Court were to assume—for sake of argument—that Gleaves did establish a prima facie case of age discrimination, there is not sufficient record evidence for a jury to infer that Creighton's stated reason for her termination (*i.e.,* the Board determination) is false. When a prima facie case is established, the burden shifts to the defendant to provide legitimate nondiscriminatory reasons for its employment decision.

Here, Creighton has presented the Court with evidence that Gleaves was terminated for a legitimate, non-discriminatory reason: the "serious non-compliance of a research project and the Institutional Review Board decision." Filing 24-11 at 1. *See Lindeman v. Saint Luke's Hosp. of Kansas City*, 899 F.3d 603, 606 (8th Cir. 2018) (determining that disclosing information in violation of hospital policy is a legitimate, non-discriminatory reason for terminating an employee); *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006) (finding that violating a company policy is a legitimate, non-discriminatory rationale for terminating an employee). So, the Court's focus is limited to whether Gleaves has shown that Creighton's stated reason for Gleaves' termination is pretextual—that is, that the employer's stated reason was false and that age discrimination was the real reason for her termination. *Lindeman*, 899 F.3d at 606.

A plaintiff provides sufficient evidence of pretext by showing that the employer's explanation is unworthy of credence because it has no basis in fact, or by persuading the Court that a prohibited reason more likely motivated the employer. *Hilde*, 777 F.3d at 1004. Either route amounts to a showing that the prohibited reason, rather than the employer's stated reason, actually motivated the adverse action. *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 975 (8th Cir. 2012). At all times, however, the plaintiff retains the burden of

persuasion to prove that age was the but-for cause of the adverse employment action. *Hilde*, 777 F.3d at 1004.

Gleaves makes two arguments as to why, in her view, age discrimination actually motivated Creighton's decision to terminate her employment. First, Gleaves alleges that the treatment of three younger employees demonstrates that the Board's decision was pretext for age discrimination. Filing 25 at 20. Second, Gleaves contends that a conversation between her and her supervisor, Sandra Byers, evinces Creighton's discriminatory animus. *See* filing 25 at 25 at 18-21; filing 25-3 at 100.

With respect to her former contention, Gleaves claims that Brooke Fitzpatrick, Sharon Brown, and Samantha Marquez were treated more leniently than she was after violating comparable study protocols.[4] Filing 25-3 at 52. That evidence, Gleaves alleges, supports her contention that age discrimination was actually the motivating factor for her termination. Pretext may be established by showing Creighton treated similarly situated employees outside Gleaves' protected class more favorably. *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013). To demonstrate that the employees are similarly situated, Gleaves need only establish that she was treated differently than other employees whose violations were of comparable seriousness. *Id.* Where evidence demonstrates that a comparator engaged in acts of comparable seriousness but was disciplined differently, a factfinder may decide whether the differential treatment is attributable to discrimination or some other cause. *Ridout*, 716 F.3d at 1085. But the "the individuals used for comparison must have dealt with the same supervisor, have been subject to the same

_____

[4] In her briefing, Gleaves focuses primarily on the conduct of Fitzpatrick rather than Brown and Marquez. *See* filing 25 at 19-21. But for sake of completeness, the Court will address why, nonetheless, Brown and Marquez are not similarly situated employees.

standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 995 (8th Cir. 2011) (internal quotation marks omitted).

Gleaves has not established that Fitzpatrick, Brown, or Marquez engaged in acts of comparable seriousness but were disciplined differently. As previously discussed, Gleaves was terminated after the Board determined she had engaged in serious informed consent and HIPPA violations. *See* filing 24-18 at 2. In particular, the Board found that Gleaves could no longer conduct human subject research as a result of her

> pattern of on-going and consistent lack of detail to protocol consenting process, HIPPA authorization, data entry, and vaccine administration as well as the misfiling of important subject documents in studies not related to that specific participant. This level of performance has persisted despite repeated re-training and development efforts. . . .

Filing 24-18 at 2; *see also* filing 24-11 at 1.

There is nothing in the record to suggest that Fitzpatrick, Brown, or Marquez engaged in similar "serious and continuing noncompliance." Filing 24-18 at 2. There is no evidence that any of those employees failed to obtain proper consents, obtained inappropriate documentation of informed consent, or inappropriately documented those consent. *Cf.* filing 24-13 at 1; *see also* filing 24-2 at 3-5. Nor is there any evidence that Fitzpatrick, Brown, or Marquez were, for any reason, prohibited from conducting any human research activity by the Board. *Cf.* Filing 24-18 at 2; *see also* filing 24-11 at 1.

Instead, the only evidence before the Court concerning the alleged misconduct of Fitzpatrick, Brown, or Marquez is Gleaves' own allegations that Fitzpatrick failed to "timely report" errors to the IRB, *see* filing 24-18 at 2; *see also* filing 24-11 at 1, Marquez filled out paperwork incorrectly, *see* filing 25-3 at 46, and Brown "falsified records" by having parents, rather than nurses, write down the temperature of their children, *see* filing 25-3 at 33, 45. Even assuming those allegations are true, they are not analogous to Gleaves' failure to obtain adequate informed consent. *Ridout*, 716 F.3d at 1085. Indeed, the purported misconduct of Brown and Marquez, however problematic, only amounts to protocol "deviations" requiring re-education. Filing 25-3 at 33-34. The misconduct of Gleaves, on the other hand, is a serious study protocol violation warranting Board reporting and review.[5] Filing 24-13 at 1; filing 24-15 at 3. As such, Creighton's failure to terminate Marquez or Brown for engaging in less serious, distinguishable protocol deviations cannot be used to demonstrate pretext. *Wierman*, 638 F.3d at 995; *see also* filing 24-13 at 1-2; filing 24-14 at 1-3.

The same is true for Fitzpatrick. Indeed, Gleaves' contends that Fitzpatrick failed to "timely report to the IRB the violations reported by Gleaves" and was never disciplined. Filing 25 at 20. According to Gleaves, that conduct is just as serious as Gleaves' initial failure to obtain the consent. But there is no evidence before the Court as to why that is true. *See* filing 25 at-3 at 25-26. And even if that evidence were in the record, Gleaves and Fitzpatrick cannot, as a matter of law, be similarly situated employees. Gleaves was a Research Nurse Coordinator while Fitzpatrick is a Senior IRB Administrator.

---

[5] So the record is clear: Gleaves was subject to repeated re-training for other protocol violations before the Board's determination and her ultimate termination. Filing 24-12 at 5-6.

*See* filing 24-12 at 1; filing 25-3 at 52; *see also* filing 24-12 at 1. That means at the time Gleaves was terminated, Gleaves and Fitzpatrick had entirely different job duties, with very different standards, and reported to different supervisors. *See* filing 24-12 at 1; filing 25-3 at 52; *see also* filing 24-12 at 1. And as noted above, individuals are not similarly situated unless they have dealt with the same supervisor and have been subject to the same standards. *Wierman*, 638 F.3d at 995. So, Fitzpatrick and Gleaves are not, and cannot, be similarly situated and Creighton's failure to terminate or discipline Fitzpatrick does not establish pretext.

That leaves Gleaves' remaining contention—the conversation between Gleaves and Byers. In that interaction, Gleaves reported that she felt overworked while her coworkers appeared to have a significant amount of free time. *See* filing 25-3 at 100. Specifically, Gleaves stated that her colleagues were "on the computers and their cell phones constantly and how they had turned their computers so people couldn't see when they went in there." Filing 25-3 at 100. In response to that statement, Byers allegedly suggested that Gleaves did not have more work than her colleagues, but rather the reason she felt she had more work "was maybe [because the other employees] worked faster at computers than [she] did because of their age." Filing 25-3 at 30. And that remark, Gleaves contends, shows that the decision to terminate her employment was actually motivated by discriminatory animus.

But not every alleged prejudiced remark made at work supports an inference of illegal employment discrimination. *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1035–36 (8th Cir. 2012). Courts carefully distinguish between comments which demonstrate a discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions, from stray remarks in the workplace, statements by

nondecisionmakers, or statements by decisionmakers unrelated to the decisional process. *King v. United States,* 553 F.3d 1156, 1160 (8th Cir. 2009), 553 F.3d at 1161; *Ramlet v. E.F. Johnson Co.,* 507 F.3d 1149, 1153 (8th Cir. 2007). And here, there is no evidence that Byer's remark influenced or had any bearing on the Board's determination or Gleaves' ultimate termination. *Cf.* filing 24-7 at 2-3. Discriminatory animus on the basis of Gleaves' age cannot reasonably be inferred from such an innocuous comment.[6] *See, e.g., Buchholz v. Rockwell Int'l Corp.,* 120 F.3d 146, 149-50 (8th Cir. 1997).

In sum, a reasonable jury could not infer that Creighton's reason for terminating Gleaves was based on anything other than the Board's determination that Gleaves' engaged in serious and continuous misconduct prohibiting her from conducting any human research activity.[7] *McKay v. United States Dep't of Transp.,* 340 F.3d 695, 700 (8th Cir. 2003); *Ryan,* 679

---

[6] Gleaves also attempts to use this conversation as evidence that Gleaves was terminated due to various mistakes she made as a result of being overworked. *See* filing 25 at 4-6. And, Gleaves claims, those makes inevitably resulted from Byers' discriminatory treatment (*i.e.*, believing Gleaves had more work because computer work took her longer). It is, however, an unfortunate fact of life that some employees are more efficient than others when it comes to computers and technology. And that might, in turn, lead to varying workloads. But that, without more, does not evince any sort of direct discrimination.

[7] The Court acknowledges Gleaves' contention that she could have been transferred to a different position in a different department. Filing 254 at 12-13. But it is undisputed that Creighton's transfer policy required all candidates, including internal transfer candidates like Gleaves, to "apply and get the [open] job on their own merit." Filing 25-10. That means, if Gleaves wanted to work at Creighton in a different position, she needed to formally apply for that position. Filing 25-10 at 4; filing 25 at 14. Gleaves was told as much during her termination meeting, but did not, and has not, applied to any other positions at Creighton. Filing 25 at 14.

F.3d at 778; *see also* filing 24-18 at 1-2. Therefore, Creighton's motion for summary judgment is granted and Gleaves' complaint is dismissed.

IT IS ORDERED:

1. Creighton's motion for summary judgment (filing 22) is granted.

2. Gleaves' complaint (filing 1) is dismissed.

3. A separate judgment will be entered.

Dated this 25th day of January, 2019.

BY THE COURT:

John M. Gerrard
Chief United States District Judge